Julee H. HEFT, Plaintiff

v.

AAI CORPORATION, Defendant

No. CIV.A. 104CV1709.

United States District Court, M.D. Pennsylvania.

Jan. 24, 2005.

John H. Arnold, Wrightsville, PA, for Plaintiff.

Heather L. Mitchell, Jeffrey P. Ayres, Venable LLP, Towson, MD, Stephen L. Grose, Keefer Wood Allen & Rahal, LLP, Camp Hill, PA, for Defendant.

## MEMORANDUM

CONNER, District Judge.

Removal, personal jurisdiction, and venue occasionally conspire to render the question of where a case proceeds as great a controversy as how it proceeds. A corporation based in Maryland asserts that a federal court sitting in Pennsylvania lacks statutory and constitutional authority to bind the company to judgment in an action removed from the state judiciary. This court disagrees, and finds that maintenance of this suit for benefits under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001–1401, comports with federal personal jurisdiction and venue requirements.

## I. Statement of Facts [1]

The ERISA claims presented in this federal action are premised on a domestic relations order entered by a Pennsylvania court of common pleas. The former husband of plaintiff, Julee H. Heft ("Heft"), was employed by defendant, AAI Corporation, and was a participant in a retirement plan administered by the company at the time of the couple's divorce in 2001. A domestic relations order designated Heft as an "alternate payee," entitled to a share of benefits under the retirement plan when they became payable.[2] Heft's ex-husband died in 2002, and she sought benefits pursuant to the order and retirement plan. AAI Corporation denied her request based on purported deficiencies in the domestic relations order. (Doc. 1, Ex. 1 ¶¶ 3–16).

Heft soon commenced a civil action, claiming breach of contract and bad faith, in the Court of Common Pleas of York County, Pennsylvania. She served the complaint on AAI Corporation at its headquarters in Maryland. The company did not respond directly to the complaint, but filed a notice of removal premised on federal question jurisdiction over ERISA claims.[3] (Doc. 1 ¶¶ 3–4, 10). Heft did not file a motion to remand.

Within several days of removal, AAI Corporation filed a motion to dismiss the complaint based on lack of personal jurisdiction and improper venue. The motion asserts that AAI Corporation is incorporated, does business, and employed Heft's ex-husband in Maryland. The company neither maintains offices or agents nor conducts any business in Pennsylvania. It administers retirement plans in Maryland, and the decision to deny benefits to Heft was made in that state. (Docs.3, 4). The parties do not dispute these facts, but only whether they provide a sufficient basis on which this court may entertain the claims. (See Docs. 5, 10).

---

1. In accordance with the standard of review for a motion to dismiss for lack of personal jurisdiction and improper venue, the court will present the facts as alleged in plaintiff's complaint and stipulated by the parties. See infra Part II. The statements contained herein reflect neither the findings of the trier of fact nor the opinion of the court as to reasonableness of the parties' allegations.

2. A copy of the order was provided to AAI Corporation, which determined that it was a "qualified domestic relations order" for purposes of ERISA. See 29 U.S.C. § 1056(d)(3) (providing for assignment of benefits through "qualified domestic relations order").

3. See Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 62–67, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987) (holding that "common law contract and tort claims are pre-empted by ERISA" and are "removable to federal court" under 28 U.S.C. § 1441(a) based on federal question jurisdiction under 28 U.S.C. § 1331).

## II. *Standard of Review*

■ Motions to dismiss for lack of personal jurisdiction or improper venue generally require the court to accept as true the allegations of the pleadings.[4] *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir.2002); *Myers v. Am. Dental Ass'n*, 695 F.2d 716, 724 (3d Cir.1982). The parties may submit affidavits in support of their positions, and may stipulate as to certain facts, but the plaintiff is entitled to rely on the allegations of the complaint absent evidentiary challenge. *Carteret Sav. Bank, F.A. v. Shushan*, 954 F.2d 141, 142 & n. 1 (3d Cir.1992); *Myers*, 695 F.2d at 724. Whatever the nature of the parties' submissions, the court is bound to view the facts in the light most favorable to the plaintiff. *Carteret*, 954 F.2d at 142 & n. 1; *Myers*, 695 F.2d at 724.

## III. *Discussion*

■ Personal jurisdiction and venue are closely related concepts. Both are concerned with the territorial reach of the court, not its inherent adjudicative power. *See Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982); *Neirbo Co. v. Bethlehem Shipbuilding Corp.*, 308 U.S. 165, 167–68, 60 S.Ct. 153, 84 L.Ed. 167 (1939). Both depend on statutory factors but incorporate equitable and prudential considerations. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); *Stafford v. Briggs*, 444 U.S. 527, 535–37, 100 S.Ct. 774, 63 L.Ed.2d 1 (1980). Both may be waived if not timely asserted. FED. R. CIV. P. 12(h)(1); *see also Bauxites*, 456 U.S. at 702, 102 S.Ct. 2099.

■ But important distinctions exist. *United States ex rel. Rudick v. Laird*, 412 F.2d 16, 20 (2d Cir.1969); 4 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1063 (3d ed.2002). The exercise of personal jurisdiction implicates constitutional, not merely statutory, concerns. *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Considerations relevant to proper venue include not only the party's activities in the forum, but also the location of other parties and their activities. *See Stafford*, 444 U.S. at 535–37, 100 S.Ct. 774. A party may preserve an objection to personal jurisdiction, but not to venue, by simply refusing to appear in the initial case and asserting a collateral challenge in a subsequent enforcement action. *Bauxites*, 456 U.S. at 702, 102 S.Ct. 2099; *Earle v. McVeigh*, 91 U.S. 503, 507, 1 Otto 503, 23 L.Ed. 398 (1875), *cited in United States v. County of Cook*, 167 F.3d 381, 388 (7th Cir.1999).

AAI Corporation has raised timely objections to both personal jurisdiction and venue, and each will receive the individual analysis that it deserves. In light of its constitutional dimension, the issue of personal jurisdiction will be addressed first. *See Leroy v. Great W. United Corp.*, 443 U.S. 173, 180, 99 S.Ct. 2710, 61 L.Ed.2d 464 (1979).

### A. *Personal Jurisdiction*

■ The authority of the United States courts to bind individuals to judgment is limited by both federal statute and the Due Process Clause of the Fifth Amendment. *Pinker*, 292 F.3d at 369. Through restrictions on the geographic scope of ef-

---

4. These motions do differ with respect to burden allocation: The plaintiff bears the ultimate burden of demonstrating that the court may exercise personal jurisdiction, *see Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir.2002), while the defendant bears the burden of showing that venue is improper, *see Myers v. Am. Dental Ass'n*, 695 F.2d 716, 724 (3d Cir.1982). This distinction, although sometimes dispositive, is of little import in resolving the motion *sub judice*, predicated on a largely undisputed factual background.

fective service of process, the legislature may prescribe the persons over whom the court may acquire jurisdiction. *Id.* But, regardless of congressional directives, the Constitution provides the ultimate limitation on the reach of a court's authority. *Id.* Thus, any analysis of personal jurisdiction requires an examination of both statutory and constitutional provisions. *Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prods. Co.*, 75 F.3d 147, 150 (3d Cir.1996).

### 1. *Statutory Provisions*

[5, 6] To satisfy the statutory aspect of personal jurisdiction, service of process on the party must be authorized under governing law. *Pinker*, 292 F.3d at 369; *DeJames v. Magnificence Carriers, Inc.*, 654 F.2d 280, 284 (3d Cir.1981). The applicable law in this case is ERISA, which provides for nationwide service of process:

> Where an action [for benefits under ERISA] is brought in a district court of the United States ... process may be served in any ... district where a defendant resides or may be found.

29 U.S.C. § 1132(e)(2); *see also* FED. R. CIV. P. 4(k)(1)(D) (providing that service is

effective if "authorized by a statute of the United States").[5] A corporation "resides" in its state of incorporation and is "found" in any district in which it purposefully conducts business. *See I.A.M. Nat'l Pension Fund v. Wakefield Indus., Inc.*, 699 F.2d 1254, 1257–58 (D.C.Cir.1983); *In re Fruehauf Trailer Corp.*, 250 B.R. 168, 200–01 (D.Del.2000). AAI Corporation is incorporated and conducts the majority of its business in Maryland, and thus is amenable to service in that state and subject to this court's jurisdiction under § 1132(e)(2). *See Pinker*, 292 F.3d at 369.

That AAI Corporation was served pursuant to Pennsylvania rules prior to removal does not affect the federal jurisdictional analysis. Once a case is removed to a district court, state limits on the territorial effectiveness of service no longer govern. *See* 28 U.S.C. §§ 1447(a), 1448.[6] The question is not whether state law would have allowed service or whether proper service has actually been made, but whether Congress has *authorized* service on the person and thereby conferred on the district court the capacity to exercise jurisdiction. *See Pinker*, 292 F.3d at 369.

---

**5.** To be precise, the applicable law in this case is the federal removal statute, which allows a district court to issue process and direct service upon parties following removal "in the same manner as in cases originally filed in such district court." 28 U.S.C. §§ 1447(a), 1448. These sections essentially incorporate by reference service provisions such as 29 U.S.C. § 1132(e)(2) (governing service in cases *brought* in a district court). *See also* FED. R. CIV. P. 81(c) ("These rules apply to civil actions removed to the United States district courts from the state courts and govern procedure after removal.").

**6.** *See also* FED. R. CIV. P. 4 cmt. C4–33; *Freeman v. Bee Mach. Co.*, 319 U.S. 448, 449–55, 63 S.Ct. 1146, 87 L.Ed. 1509 (1943) (citing *Lambert Run Coal Co. v. Balt. & Ohio R.R. Co.*, 258 U.S. 377, 382, 42 S.Ct. 349, 66 L.Ed. 671 (1922)); *Goldey v. Morning News*, 156

U.S. 518, 521–22, 525–26, 15 S.Ct. 559, 39 L.Ed. 517 (1895); *Witherow v. Firestone Tire & Rubber Co.*, 530 F.2d 160, 166–69 (3d Cir. 1976); *Micromedia v. Automated Broad. Controls*, 799 F.2d 230, 233 (5th Cir.1986); *Lawrence v. Hanson*, 197 F.Supp.2d 533, 538–39 (W.D.Va.2002); *Wright v. Xerox Corp.*, 882 F.Supp. 399, 410–11 (D.N.J.1995); *Weinberg v. Colonial Williamsburg, Inc.*, 215 F.Supp. 633, 635–38 (E.D.N.Y.1963); *Weisler v. Matta*, 95 F.Supp. 152, 155 (W.D.Pa.1951); 4A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1082 (3d ed.2002); David F. Johnson, *Removal and the Special Appearance—Which To Do First?*, 19 REV. LITIG. 25, 38–44 (2000); *cf. Henderson v. United States*, 517 U.S. 654, 657 n. 2, 116 S.Ct. 1638, 134 L.Ed.2d 880 (1996) (citing *Hanna v. Plumer*, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965)); *Bradshaw v. Gen. Motors Corp.*, 805 F.2d 110, 112 (3d Cir.1986).

■ Many cases, from this circuit and others, suggest to the contrary that effective service of process is a necessary prerequisite to the exercise of personal jurisdiction.[7] These statements, most of which appear to be dicta, represent an unwarranted fusion of the concepts of notice and personal jurisdiction. Both are necessary prerequisites to a valid judgment, but they stand on fundamentally different doctrinal bases. *See Henderson v. United States,* 517 U.S. 654, 671–72, 116 S.Ct. 1638, 134 L.Ed.2d 880 (1996); *Peay v. BellSouth Med. Assistance Plan,* 205 F.3d 1206, 1209–10 (10th Cir.2000); *see also* Harold L. Korn, *The Development of Judicial Jurisdiction in the United States: Part I,* 65 BROOK. L. REV. 935, 983–99 (1999); James Weinstein, *The Federal Common Law Origins of Judicial Jurisdiction: Implications for Modern Doctrine,* 90 VA. L. REV. 169, 194–203 (2004). The notice requirement ensures that interested individuals are apprised of the pendency of a lawsuit and have a fair opportunity to decide "whether to appear or default, acquiesce or contest." *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950); *see also Henderson,* 517 U.S. at 671–72, 116 S.Ct. 1638; *Mennonite Bd. of Missions v. Adams,* 462 U.S. 791, 795–97, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983). In contrast, personal jurisdiction limitations guarantee that individuals—regardless of whether they had notice of the pendency of an action—will not be compelled to appear in a court with which they have no connection. *See Bauxites,* 456 U.S. at 702, 102 S.Ct. 2099; *Int'l Shoe,* 326 U.S. at 316, 66 S.Ct. 154. Merely because the two concepts flow from similar sources—service of process rules and the Due Process Clause—does not mean that one must fall within the ambit of the other.[8] *See* Robert Haskell Abrams, *Power. Convenience, and the Elimination of Personal Jurisdiction in the Federal Courts,* 58 IND. L.J. 1, 4–9, 36–42 (1982); *see also* 4 WRIGHT & MILLER, *supra,* § 1063; Arthur T. von Mehren & Donald T. Trautman, *Jurisdiction To Adjudicate: A Suggested Analysis,* 79 HARV. L. REV. 1121, 1134 (1966), *cited with approval in Henderson,* 517 U.S. at 672 n. 25, 116 S.Ct. 1638.

■ Nevertheless, the court cannot and will not "overrule" these precedential statements. *See Mennen Co. v. Atlantic Mut. Ins. Co.,* 147 F.3d 287, 294 n. 9 (3d Cir.1998); *Poulis v. State Farm Fire & Cas. Co.,* 747 F.2d 863, 867 (3d Cir.1984). Instead, to assure that statutory limitations on personal jurisdiction are satisfied in this case, the court will direct that new process issue and that Heft effect service on AAI Corporation pursuant to 29 U.S.C. § 1132(e)(2). *See* 28 U.S.C. § 1448 ("In all cases removed from any State court to any district court of the United States in which ... service has not been perfected prior to removal ... service may be completed or

---

7. *See, e.g., Omni Capital Int'l. Ltd. v. Rudolf Wolff & Co., Ltd.,* 484 U.S. 97, 104, 108 S.Ct. 404, 98 L.Ed.2d 415 (1987) ("Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied.") (citing *Miss. Publ'g Corp. v. Murphree,* 326 U.S. 438, 444–45, 66 S.Ct. 242, 90 L.Ed. 185 (1946)), *quoted in Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.,* 526 U.S. 344, 350–51, 119 S.Ct. 1322, 143 L.Ed.2d 448 (1999); *Lampe v. Xouth, Inc.,* 952 F.2d 697, 700–01 (3d Cir.1991) ("Effective service of process is therefore a prerequisite to proceeding further in a case.") (citing *Hansberry v. Lee,* 311 U.S. 32, 40, 61 S.Ct. 115, 85 L.Ed. 22 (1940)).

8. Indeed, to hold that a failure of service necessarily establishes a failure of personal jurisdiction would render Federal Rule of Civil Procedure 12(b)(5) (permitting a motion to dismiss for insufficiency of process) superfluous, wholly encompassed by Rule 12(b)(2) (permitting a motion to dismiss for lack of personal jurisdiction).

new process issued in the same manner as in cases originally filed in such district court."). Whatever doubts may be harbored over the effectiveness of service under Pennsylvania rules,[9] proper service under § 1132(e)(2) will clearly permit the court to exercise jurisdiction over AAI Corporation. *See Pinker,* 292 F.3d at 369; *Lampe v. Xouth. Inc.,* 952 F.2d 697, 700–01 (3d Cir.1991); *see also* 4A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1075, at 411 (3d ed.2002).

### 2. *Constitutional Provisions*

█ The constitutional personal jurisdiction inquiry in the case *sub judice* is more complex. The issue must be analyzed within the context of the familiar "minimum contacts" test enunciated in *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Under this standard, the exercise of personal jurisdiction is permissible if (1) the party has "minimum contacts" with the territory of the "forum" and (2) the assertion of jurisdiction comports with "traditional notions of fair play and substantial justice." *Id.* at 316, 66 S.Ct. 154 (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940)). Only if both these conditions are satisfied may the district court constitutionally bind the party to judgment.

### a. *Minimum Contacts*

An obvious prerequisite to assessing a party's contacts with the "forum" is defining the latter term. It is well settled that the "forum" of a *state* court is the territory of the state itself. *Id.; see also Burger King,* 471 U.S. at 474, 105 S.Ct. 2174.

Less clear is the nature of the "forum" of a district court: whether it is the territory of the state in which the court sits, the territory of the United States, or a more amorphous geographic range. *See, e.g., Omni Capital Int'l. Ltd. v. Rudolf Wolff & Co., Ltd.,* 484 U.S. 97, 102 n. 5, 108 S.Ct. 404, 98 L.Ed.2d 415 (1987). Resolving this issue requires a thorough explication of *in personam* jurisdiction.

█ Often phrased as a limitation on the inherent power of the court, personal jurisdiction actually represents a manifestation of individual liberties protected by the Fifth and Fourteenth Amendments. *Bauxites,* 456 U.S. at 702, 102 S.Ct. 2099. The Due Process Clause guarantees individuals that they will be required to appear in a court only if they have voluntarily associated themselves with that tribunal in some fashion. *Id.; Burger King,* 471 U.S. at 464, 474, 105 S.Ct. 2174. A court that shares no relationship with a person and yet attempts to impose a judgment upon him or her acts in violation of the person's constitutional rights to due process. *Bauxites,* 456 U.S. at 702, 102 S.Ct. 2099.

The association necessary to permit the exercise of *in personam* jurisdiction may come from the individual's personal appearance in the court itself or, as is more often the case, from the individual's affiliation with the governing entity. *Int'l Shoe,* 326 U.S. at 316, 66 S.Ct. 154; *see also Pennoyer v. Neff,* 95 U.S. 714, 732–33, 5 Otto 714, 24 L.Ed. 565 (1877). A judicial tribunal is an arm of government and is vested with facets of the sovereign power of government over its territory. *Id.; see also Burger King,* 471 U.S. at 470–75, 105

---

9. In light of AAI Corporation's lack of significant contacts with the Commonwealth of Pennsylvania, the initial service of process in this case was defective. *See* 42 PA. CONS STAT. § 5322(b), (d) (providing that service of process "outside of this Commonwealth" is effective if personal jurisdiction may be asserted over the person consistent with "the Constitution of the United States."); *see also infra* text accompanying note 13.

S.Ct. 2174; *Bauxites,* 456 U.S. at 702–03, 102 S.Ct. 2099. Those individuals who voluntarily associate themselves with the territory—whether through citizenship, ownership of land, relationships with residents, or other "minimum contacts"—also voluntarily associate themselves with the courts of that government. *Burger King,* 471 U.S. at 474–75, 105 S.Ct. 2174; *Int'l Shoe,* 326 U.S. at 316, 66 S.Ct. 154. They may then be haled into those tribunals without offense to their due process rights. *Bauxites,* 456 U.S. at 702–03, 102 S.Ct. 2099. The "forum" of a court for purposes of due process is the territory of the overarching sovereign government.

It necessarily follows that the "forum" of the federal courts is the entire territory of the United States. Regardless of their location, federal courts are components of the national government, and exercise a portion of its sovereign powers. *See Max Daetwyler Corp. v. Meyer,* 762 F.2d 290, 293–95 (3d Cir.1985). Those individuals who have voluntarily associated themselves with the United States—whether through citizenship or other "minimum contacts"—have voluntarily associated themselves with the federal judiciary. They may be haled into those tribunals without offense to their due process

rights.[10] *See id.; see also Bauxites,* 456 U.S. at 702–03, 102 S.Ct. 2099.

■ The Due Process Clauses of the Fifth Amendment, applicable to federal courts, and the Fourteenth Amendment, applicable to state courts, impose the same standard for the exercise of personal jurisdiction: a person will be required to appear in a court only if he or she has purposefully established a connection with the "forum." *See Max Daetwyler,* 762 F.2d at 293–95. The only distinction between the two Amendments is in application. The "forum" of a state court is the territory of the state of which it is a part. The "forum" of a federal court is the territory of the United States.[11] *See id.*

Several courts of appeal, most explicitly the First Circuit, have held to the contrary that, at least in cases premised on diversity of citizenship, a federal district court cannot exercise personal jurisdiction unless the party has some affiliation—"minimum contacts"—with the state in which the court sits. *See, e.g., United Elec., Radio. & Mach. Workers v. 163 Pleasant Street Corp.,* 960 F.2d 1080, 1085 (1st Cir. 1992).[12] Under this reasoning, the "forum" of the district court is the same as the "forum" of the courts of the state encompassing the district. *Id.*

10. As a practical matter, alien defendants would enjoy a much greater likelihood of success than domestic defendants in a constitutional challenge to the exercise of personal jurisdiction by a federal court. *See, e.g., United States v. Swiss Am. Bank, Ltd.,* 274 F.3d 610, 618 (1st Cir.2001); Graham C. Lilly, *Jurisdiction over Domestic and Alien Defendants,* 69 VA. L. REV. 85, 128–49 (1983).

11. *Cf.* U.S. CONST. amend. XIV § 1 ("All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States *and* of the State wherein they reside.") (emphasis added).

12. *See also Pinker,* 292 F.3d at 369; *Swiss Am.,* 274 F.3d at 618; *Posner v. Essex Ins. Co.,*

178 F.3d 1209, 1214 (11th Cir.1999); *Computer Assocs. Int'l. Inc. v. Altai, Inc.,* 126 F.3d 365, 370 (2d Cir.1997); *Far W. Capital, Inc. v. Towne,* 46 F.3d 1071, 1074 (10th Cir.1995); *Akro Corp. v. Luker,* 45 F.3d 1541, 1544–45 (Fed.Cir.1995); *Reynolds v. Int'l Amateur Athletic Fed'n,* 23 F.3d 1110, 1115–16 (6th Cir. 1994); *Carlough v. Amchem Prods., Inc.,* 10 F.3d 189, 199 (3d Cir.1993); *Interfirst Bank Clifton v. Fernandez,* 844 F.2d 279, 282 (5th Cir.), *amended on other grounds,* 853 F.2d 292 (5th Cir.1988); *Giotis v. Apollo of the Ozarks, Inc.,* 800 F.2d 660, 664–65 (7th Cir.1986); *Investor Prot. Corp. v. Vigman,* 764 F.2d 1309, 1316 (9th Cir.1985), *rev'd on other grounds sub nom. Holmes v. Sec. Investor Prot. Corp.,* 503 U.S. 258, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992).

If this is a correct statement of law, the court would likely be required to dismiss the complaint *sub judice* for lack of personal jurisdiction. AAI Corporation is a citizen of Maryland. It has no offices in and directs no business to Pennsylvania. It shares a relationship with the state only because the wife of one of its employees was named as assignee of benefits by a Pennsylvania court. The attenuated and limited connection that AAI Corporation shares with Pennsylvania would not support the exercise of personal jurisdiction by a court of that forum.[13] *See Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958) ("The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State."), *quoted in Burger King,* 471 U.S. at 474–75, 105 S.Ct. 2174.

■■■■■■ Nevertheless, this court need not dismiss the complaint *sub judice.* Jurisdictional "forum" restrictions imposed on state courts do not burden federal tribunals. *See* Graham C. Lilly, *Jurisdiction over Domestic and Alien Defendants,* 69 Va. L. Rev. 85, 128–49 (1983), *cited with approval in Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 417, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). The view to the contrary—that the "forum" of the federal courts is limited to the territory of the state in which it sits—is premised on a conflation of statutory and constitutional requirements and a misreading of Supreme Court precedent.

Several decisions by the Court have analyzed the reach of a district court's personal jurisdiction by reference to the defendant's contacts with the state in which the federal court sits.[14] Lower courts and commentators have seized on these opinions as holding that Fourteenth Amendment analysis, with its more limited territorial "forum," applies to district courts. *See, e.g., Akro Corp. v. Luker,* 45 F.3d 1541, 1544–45 (Fed.Cir.1995); Gerald Abraham, *Constitutional Limitations upon the Territorial Reach of Federal Process,* 8 VILL. L. REV. 520, 523–31 (1963).[15]

■■■■ But these decisions, although discussing the Fourteenth Amendment, were analyzing the statutory—not the constitutional—propriety of the exercise of personal jurisdiction. In these cases, the district courts had asserted jurisdiction over the objecting parties based on provisions of the Federal Rules of Civil Procedure permitting effective service on any person "who could be subjected to the jurisdiction of a court of general jurisdiction in the state in which the district court is located."[16] This *statutory* requirement of federal court jurisdiction incorporates the *constitutional* requirement of state court

---

**13.** The court need not resolve, as Heft argues, whether the Pennsylvania activities of a subsidiary of AAI Corporation's parent company establish the minimum contacts necessary to support the exercise of personal jurisdiction over AAI Corporation by Pennsylvania courts. *But see Clark v. Matsushita Elec. Indus. Co.,* 811 F.Supp. 1061, 1067–70 (M.D.Pa.1993) (rejecting similar argument).

**14.** *See Bendix Autolite Corp. v. Midwesco Enter., Inc.,* 486 U.S. 888, 890–91, 108 S.Ct. 2218, 100 L.Ed.2d 896 (1988); *Omni Capital,* 484 U.S. at 102–03, 108 S.Ct. 404; *Burger King,* 471 U.S. at 464, 473–79, 105 S.Ct. 2174; *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 772–75, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984); *see also Pennoyer,* 95 U.S. at 732–33, 5 Otto 714.

**15.** *See also* cases cited *supra* note 12.

**16.** FED. R. CIV P. 4(k)(1)(A); *see* cases cited *supra* note 14. Similar statutory provisions and rules have been in effect since the Judiciary Act of 1789, ch. 20, § 11, 1 Stat. 73, 78. *See* Robert C. Casad, *Personal Jurisdiction in Federal Question Cases,* 70 TEX. L. REV. 1589, 1593–94 (1992).

jurisdiction. *See Omni Capital,* 484 U.S. at 105–06, 108 S.Ct. 404; *Max Daetwyler,* 762 F.2d at 295–97; RESTATEMENT (SECOND) OF JUDGMENTS § 4 cmt. f (1982). It necessitates an inquiry into the reach of personal jurisdiction in the state courts under the Fourteenth Amendment but does not supplant or alter the constitutional limitations imposed on federal courts under the Fifth Amendment.[17] Only the Fifth Amendment governs the due process rights of individuals before the federal courts, whether invoked on grounds of diversity [18] or federal question, and the only relevant "forum" for purposes of the constitutional analysis is the United States as a whole. *See Miss. Publ'g Corp. v. Murphree,* 326 U.S. 438, 442, 66 S.Ct. 242, 90 L.Ed. 185 (1946); *Coleman v. Am. Exp. Isbrandtsen Lines,*

*Inc.,* 405 F.2d 250, 251–53 (2d Cir.1968) (Friendly, J.); *Gamble v. Lyons Precast Erectors, Inc.,* 825 F.Supp. 92, 94 (E.D.Pa. 1993).[19] *But cf. Pinker,* 292 F.3d at 369 (suggesting that Fourteenth Amendment applies to district courts sitting in diversity) (citing *IMO Indus., Inc. v. Kiekert AG,* 155 F.3d 254, 259 (3d Cir.1998)).

It is thus clear that AAI Corporation possesses "minimum contacts" with the "forum" of this court. As a corporation incorporated and doing business in the United States, it has voluntarily associated itself with the federal government and enjoys the protection of federal law. These national contacts support the exercise of personal jurisdiction over AAI Corporation. *See id.*

**17.** Of course, resolution of the statutory inquiry in these circumstances invariably obviates the need to examine the constitutional question. *See, e.g., Omni Capital,* 484 U.S. at 105–06, 108 S.Ct. 404. If a state court can exercise jurisdiction under the Fourteenth Amendment, based on the individual's contacts with the state, then the federal court can exercise jurisdiction under the Fifth Amendment, based on the individual's contacts with the United States. *Max Daetwyler,* 762 F.2d at 295–97. And, conversely, if a state court cannot exercise personal jurisdiction, then the federal courts are statutorily prohibited from doing so (assuming that the basis of jurisdiction is Federal Rule of Civil Procedure 4(k)(1)(A)), rendering the constitutional inquiry superfluous.

**18.** Federalism concerns related to *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), do not require exportation of Fourteenth Amendment limitations on state court personal jurisdiction to the federal judiciary. The *Erie* doctrine expresses a preference for application of state substantive law in federal cases based on diversity of citizenship. *Id.* at 79–80, 58 S.Ct. 817. It has no impact on a district court's exercise of personal jurisdiction, a matter governed by express federal statutory and constitutional principles. *See Hanna,* 380 U.S. at 468, 85 S.Ct. 1136; *see also*

*Henderson,* 517 U.S. at 657 n. 2, 671–72, 116 S.Ct. 1638; *Freeman,* 319 U.S. at 449–55, 63 S.Ct. 1146; *Bradshaw,* 805 F.2d at 112; *Arrowsmith v. UPI,* 320 F.2d 219, 226–28 (2d Cir.1963) (Friendly, J.); FED. R. CIV. P. 4 cmt. C4–33 ("Many lawyers looking to state law to resolve an issue in a federal court automatically assume that they are doing so under the mandate of the Erie doctrine (see Commentary C4–40), which is seen mainly in diversity cases. But this provision adopts state extraterritorial bases for personal jurisdiction in all categories of federal subject matter jurisdiction."); Abrams, *supra,* at 25–27; David S. Welkowitz, *Beyond Burger King: The Federal Interest in Personal Jurisdiction,* 56 FORDHAM L. REV. 1, 11–21 (1987). *But cf. Nat'l Equip. Rental, Ltd. v. Szukhent,* 375 U.S. 311, 331, 84 S.Ct. 411, 11 L.Ed.2d 354 (1964) (Black, J., dissenting) (suggesting otherwise); Abraham, *supra,* at 523–31 (same).

**19.** *See also* FED. R. CIV. P. 4 cmts. C4–33, C4–40; RESTATEMENT (SECOND) OF JUDGMENTS § 4 cmt. f (1982); Casad, *supra,* at 1594–98; Maryellen Fullerton, *Constitutional Limits on Nationwide Personal Jurisdiction in the Federal Courts,* 79 NW. U.L. REV. 1, 39–60 (1984); Lilly, *supra,* at 129–30; Robert A. Lusardi, *Nationwide Service of Process: Due Process Limitations on the Power of the Sovereign,* 33 VILL. L. REV. 1, 23–44 (1988); Welkowitz, *supra,* at 11–21.

### b. *Fair Play*

This does not end the constitutional due process analysis, however. The exercise of personal jurisdiction must not only be supported by "minimum contacts" with the forum, but must comport with "traditional notions of fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 316, 66 S.Ct. 154. The first prerequisite has been satisfied in this case, but the latter bears further examination.

■■■■■■ The phrase "traditional notions of fair play and substantial justice" embodies the principle that a court may not bind a party to judgment when the burden of appearing in the tribunal substantially and unjustifiably limits the party's ability to defend against the action. *See World–Wide Volkswagen v. Woodson*, 444 U.S. 286, 291–92, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). Put more simply, it must be reasonable in light of legitimate government interests to compel the defendant to appear in the particular tribunal to defend against the particular suit. Whether the exercise of personal jurisdiction is "fair" requires consideration of the burden on the defendant and the forum's "interest in furthering the policies of the law(s) under which the plaintiff is suing." [20] *Pinker*, 292 F.3d at 370–71.

■■ The court disagrees with those opinions that have held, either expressly or implicitly, that a reasonableness inquiry is unnecessary under the Fifth Amendment when the defendant is a citizen of the United States.[21] These decisions have focused almost exclusively on the concept of sovereignty, suggesting that a federal court's exercise of personal jurisdiction over a domestic defendant is constitutionally reasonable *per se*. *See Bd. of Trs. v. Elite Erectors, Inc.*, 212 F.3d 1031, 1036–37 (7th Cir.2000). Although arguably finding some favor in the Supreme Court,[22] this principle has not been adopted by a majority of Justices and appears inconsistent with the characterization of personal jurisdiction as an individual right (not an inherent limitation on judicial power). *See Bauxites*, 456 U.S. at 702–03, 102 S.Ct. 2099; *Peay*, 205 F.3d at 1209–13; *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 946–47 (11th Cir.1997). Moreover, it seems to ignore the distinction between the "minimum contacts" and "fair play" inquiries. Unlike the "minimum contacts" analysis, driven by traditional doctrines of sovereignty and concerned with the connection between the forum and the litigant, *see Pennoyer*, 95 U.S. at 732–33, 5 Otto 714, the "fair play" inquiry encompasses qualitatively different

---

**20.** Again, the standard is the same under both the Fifth and Fourteenth Amendments, with changes only in the nature of the "forum." *Peay*, 205 F.3d at 1209–13; *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 946–47 (11th Cir.1997); *accord Pinker*, 292 F.3d at 370–71.

**21.** *See Bd. of Trs. v. Elite Erectors, Inc.*, 212 F.3d 1031, 1036–37 (7th Cir.2000); *Investor Prot. Corp. v. Vigman*, 764 F.2d 1309, 1316 (9th Cir.1985), *rev'd on other grounds sub nom. Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992); *Fitzsimmons v. Barton*, 589 F.2d 330 (7th Cir.1979); *Briggs v. Goodwin*, 569 F.2d 1, 9 & n. 74 (D.C.Cir.1977), *overruled on other grounds sub nom. Stafford v. Briggs*, 444 U.S.

527, 100 S.Ct. 774, 63 L.Ed.2d 1 (1980); *Mariash v. Morrill*, 496 F.2d 1138, 1143 (2d Cir. 1974); *see also* Abrams, *supra*, at 25–27.

**22.** *See Burnham v. Superior Court of Cal.*, 495 U.S. 604, 609, 110 S.Ct. 2105, 109 L.Ed.2d 631 (1990) (plurality opinion of Scalia, J.) (stating that personal service on individual within forum satisfies due process requirements *per se* ); *Stafford*, 444 U.S. at 554, 100 S.Ct. 774 (Stewart, J., dissenting) ("The issue is not whether it is unfair to require a defendant to assume the burden of litigating in an inconvenient forum, but rather whether the court of a particular sovereign has power to exercise personal jurisdiction over a named defendant.").

interests related to policies of the forum and burdens on the parties, *see World–Wide Volkswagen*, 444 U.S. at 291–92, 100 S.Ct. 559. These interests are essentially unrelated to sovereignty but are undoubtably entitled to protection under the Due Process Clause. *Peay*, 205 F.3d at 1209–13; *Republic of Panama*, 119 F.3d at 946–47, *cited in Pinker*, 292 F.3d at 370–71; *Oxford First Corp. v. PNC Liquidating Corp.*, 372 F.Supp. 191, 203–05 (E.D.Pa. 1974) (Becker, J.).[23]

State borders do not deserve significant weight in evaluating the fairness of haling a defendant into a federal court. *See Pinker*, 292 F.3d at 370–71; *Republic of Panama*, 119 F.3d at 946–47 (citing 4 WRIGHT & MILLER, *supra*, § 1067.1). When the "forum" is the territorial United States, there is no basis to preclude a court from exercising jurisdiction merely because the party would be required to cross into another state. *See Miss. Publ'g*, 326 U.S. at 442, 66 S.Ct. 242; *Coleman*, 405 F.2d at 251–53; *Gamble*, 825 F.Supp. at 94. Reasonableness must be gauged on the basis of actual burdens, not fictional boundaries. A district court will be unable to exercise jurisdiction over a party only if actual costs of appearance clearly and substantially outweigh the national interest in permitting litigation in that tribunal. *Peay*, 205 F.3d at 1209–13; *Republic of Panama*, 119 F.3d at 946–47, *Oxford First*, 372 F.Supp. at 203–05; *see also Pinker*, 292 F.3d at 370–71; *Max Daetwyler*, 762 F.2d at 293–95.[24]

The exercise of personal jurisdiction over AAI Corporation satisfies these constitutional limitations. The federal interest underlying ERISA—facilitation of beneficiary claims, *see* 29 U.S.C. § 1001(b)—is undoubtably proper and clearly advanced by nationwide jurisdiction over administrators. And, even if the burden on a particular administrator could occasionally outweigh these interests, *see Republic of Panama*, 119 F.3d at 947 ("We emphasize that it is only in highly unusual cases that inconvenience will rise to a level of constitutional concern."), this is not such a case. AAI Corporation is based in Hunt Valley, Maryland, less than one hundred miles from this court.[25] Although a state boundary separates AAI Corporation and the court, the company has identified no actual burdens arising from its appearance.

Exercise of personal jurisdiction over AAI Corporation is supported by "minimum contacts" and comports with "traditional notions of fair play and substantial justice." Accordingly, the motion to dismiss for lack of personal jurisdiction will be denied.

### B. *Venue*

Of course, that the court may exercise jurisdiction over the parties does not necessarily render it the appropriate district for the claims. *See Robertson v. R.R. Labor Bd.*, 268 U.S. 619, 623, 45 S.Ct. 621, 69 L.Ed. 1119 (1925). Venue is concerned not with the constitutional authority of the court to bind the parties to judgment, but with the statutory propriety of the location for adjudication of the claims. *See Stafford*, 444 U.S. at 535–37, 100 S.Ct. 774; *Leroy*, 443 U.S. at 183–84, 99 S.Ct. 2710. Only if there is a legally cognizable nexus among the district, the

---

**23.** Fullerton, *supra*, at 39–60; Henry M. Hart, Jr., *The Power of Congress To Limit the Jurisdiction of Federal Courts: An Exercise in Dialectic*, 66 HARV. L. REV. 1362, 1365 (1953); Lusardi, *supra*, at 23–44; Welkowitz, *supra*, at 26–48.

**24.** *See also* sources cited *supra* note 23.

**25.** *Cf.* FED. R. CIV. P. 4(k)(1)(B) (permitting service on parties "at a place within a judicial district of the United States and not more than 100 miles from the place from which the summons issues").

dispute, and the parties may the court entertain the action. *See id.*

■■■ The United States Code contains a number of venue provisions. The general venue statute, 28 U.S.C. § 1391, defines the appropriate district for most cases brought in federal court. *See Polizzi v. Cowles Magazines, Inc.,* 345 U.S. 663, 665, 73 S.Ct. 900, 97 L.Ed. 1331 (1953). Other provisions, scattered throughout the Code, offer other venues for specific causes of action. *See, e.g.,* 9 U.S.C. §§ 9–11 (arbitration claims); 28 U.S.C. § 1400(b) (patent claims). These sections are often (but not always) in the alternative, not the exclusive, and grant parties greater choice of venue. *Cortez Byrd Chips. Inc. v. Bill Harbert Constr. Co.,* 529 U.S. 193, 203–04, 120 S.Ct. 1331, 146 L.Ed.2d 171 (2000).

Like many statutory schemes, ERISA contains a venue provision. When a participant or beneficiary brings suit in federal court for the payment of benefits owed under a qualifying employee plan, the case "may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found." 29 U.S.C. § 1132(e)(2). The expanded venue choice offered by this section conforms with the general goal of ERISA: "to protect ... the interests of participants in employee benefit plans and their beneficiaries ... by providing ... ready access to the Federal courts." *Id.* § 1001(b); *see also Keating v. Whitmore Mfg. Co.,* 981 F.Supp. 890, 892–93 (E.D.Pa. 1997) (Van Antwerpen, J.).

The parties debate an issue that has split district courts: whether a "breach" of ERISA plan for purposes of 29 U.S.C. § 1132(e)(2) "[takes] place" at the location from which payments were to be made or at which payments were to be received. Most courts have reasoned that, because the breach occurs *when* the beneficiary does not receive a payment, the breach occurs *where* the payment was owed. Others have held that the decision to withhold payment is made by the administrator and, as such, the breach occurs at the administrator's location.[26]

However intriguing this issue may be, it is simply irrelevant to the matter *sub judice.* This case was originally commenced in a state court, and is now pending in the federal judiciary because of the privilege granted to defendants by 28 U.S.C. § 1441(a):

> Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

*Id.* This section acts not only as a grant of authority, but also as a limitation on venue. *See Polizzi,* 345 U.S. at 665, 73 S.Ct. 900. A state court action may be removed only to the "district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). Proper venue in a removed action is governed by this limitation. *Polizzi,* 345 U.S. at 665, 73 S.Ct. 900; *Hollis v. Fla. State Univ.,* 259 F.3d 1295, 1300 (11th Cir.2001).[27]

---

**26.** *Compare Keating,* 981 F.Supp. at 892–93 (concluding that the breach "took place" in the district where payments were to be made under the plan), *and Bostic v. Ohio River Co. (Ohio Div.) Basic Pension Plan,* 517 F.Supp. 627, 635–36 (S.D.W.Va.1981), *with Turner v. CF&I Steel Corp.,* 510 F.Supp. 537, 542 (E.D.Pa.1981) (concluding that the breach "took place" in the district where decision

not to honor the plan's benefits was made), *and Boyer v. J.A. Majors Co. Employees' Profit Sharing Plan,* 481 F.Supp. 454, 459 (N.D.Ga. 1979) (same).

**27.** The court disagrees with *Superior Precast, Inc. v. Safeco Ins. Co. of Am.,* 71 F.Supp.2d 438, 442 (E.D.Pa.1999), in which the court applied 28 U.S.C. § 1391 to analyze the pro-

■ Provisions such as 29 U.S.C. § 1132(e)(2) do not limit venue choice in removed cases. These sections prescribe the district in which an action may be "brought" and pertain only to cases commenced originally in the federal courts. *See Polizzi*, 345 U.S. at 665, 73 S.Ct. 900. They are inapplicable to the question of proper venue in a case properly commenced in a state court and later removed to the federal system under 28 U.S.C. § 1441(a).[28] *Polizzi*, 345 U.S. at 665, 73 S.Ct. 900; *see also Hollis*, 259 F.3d at 1300.

■ Several authorities have suggested that challenges to proper venue are "waived" by the defendant's removal of an action. *See* 14C CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 3726 (3d ed.1998). This is a misnomer. Once a defendant files a notice of removal, the propriety of venue is determined by reference to § 1441(a). *See Polizzi*, 345 U.S. at 665, 73 S.Ct. 900. Other provisions, including state statutes, are not "waived" by the defendant's action but are simply no longer applicable to the question of proper venue.[29] *Hollis*, 259 F.3d at 1300.

■ Nonetheless, other venue provisions are potentially relevant in cases removed from state courts. As discussed previously, venue statutes presumptively operate in the alternative rather than the prohibitive.[30] *See Cortez*, 529 U.S. at 203–04, 120 S.Ct. 1331. That an action must be removed to the "district and division embracing the place where such action is pending," 28 U.S.C. § 1441(a), does not suggest that the case cannot thereafter be transferred to another district or another division. Indeed, the federal transfer statute, 28 U.S.C. § 1404(a), plainly contemplates this situation. It provides that a court in which venue is proper may nevertheless "transfer any civil action to any other district or division *where it might have been brought*."[31] *Id.* (emphasis add-

---

priety of venue in a removed action. *See Polizzi*, 345 U.S. at 665, 73 S.Ct. 900 ( "[Section] 1391 has no application to ... a removed action[,] ... governed by ... § 1441(a) ....").

28. The court expresses no view as to whether a restrictive venue provision, such as the one found in the National Bank Act, 12 U.S.C. § 94 (imposing restrictions on venue in cases brought in both federal and state courts), would be supplanted by 28 U.S.C. § 1441(a) in a removed case. *See Tanglewood Mall, Inc. v. Chase Manhattan Bank*, 371 F.Supp. 722, 724–26 (W.D.Va.) ("The conflict between the venue provision of § 1441 and that in § 94 once a case such as this is removed must be resolved in favor of § 94 ...."), *aff'd*, 508 F.2d 838 (4th Cir.1974). *But cf.* 28 U.S.C. § 1441(f) ("The court to which a civil action is removed under this section is not precluded from hearing and determining any claim in such civil action because the State court from which such civil action is removed did not have jurisdiction over that claim.").

29. A defendant who removes to an improper forum (i.e., to a district and division *not* "em-

bracing the place where such action is pending") may be precluded from challenging venue under § 1441(a) but this would likely be justified on grounds of estoppel rather than waiver. *Cf.* 14C WRIGHT ET AL., *supra*, § 3726.

30. Neither the language nor legislative history of ERISA arguably defeats this presumption. *See Keating*, 981 F.Supp. at 892–93 (discussing congressional intent to provide broad venue choice in ERISA cases); *cf. Cortez Byrd Chips, Inc.*, 529 U.S. at 203–04, 120 S.Ct. 1331.

31. The other federal transfer statute, 28 U.S.C. § 1406, provides that the "district court of a district in which is filed a case laying venue in the wrong division or district ... [may] transfer such case to any district or division in which it could have been brought." *Id.* This provision has no application in the instant case, where venue is proper in this district under § 1441(a). *See Salovaara v. Jackson Nat'l Life Ins. Co.*, 246 F.3d 289, 297–99 (3d Cir.2001).

ed). An action may be removed to only one forum but it may thereafter be transferred to any venue permitted by federal law.[32] *See Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 32, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988); *Salovaara v. Jackson Nat'l Life Ins. Co.*, 246 F.3d 289, 297–99 (3d Cir.2001).

■ But whether a transfer may be warranted in the interest of justice is not the issue before the court. The motion *sub judice* seeks dismissal of the case under Federal Rule of Civil Procedure 12(b)(3) for "improper" venue. Although other districts may be available for adjudication of these claims, the Middle District of Pennsylvania, as the district "embracing the place" where the removed action was originally brought, is clearly the "proper" venue under § 1441(a). *See Ward v. Maloney*, No. 1:02–CV–00467, 2003 WL 1562424, at *2–3 (M.D.N.C. Mar.21, 2003) ("[T]he provisions of [29 U.S.C. § 1132(e)(2)] do not determine venue in removed ERISA actions[; rather,] venue in such actions is determined under [28 U.S.C. § 1441(a)]."); *see also Polizzi*, 345 U.S. at 665, 73 S.Ct. 900; *Hollis*, 259 F.3d at 1300. Therefore, the motion to dismiss for improper venue will be denied.

## IV. *Conclusion*

■ A federal court is not bound by the personal jurisdiction and venue limitations that burden the state court from which a case is removed. Notwithstanding whether Pennsylvania tribunals could have entertained the action *sub judice*, this court is authorized to do so under ERISA and the Fifth Amendment to the United States Constitution. The motion to dismiss will be denied.

An appropriate order will issue.

## *ORDER*

AND NOW, this 24th day of January, 2005, upon consideration of defendant's motion to dismiss (Doc. 3), and for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that:

1. The motion to dismiss (Doc. 3) is DENIED.

2. Plaintiff shall effect service of process on defendant and file proof thereof on or before February 14, 2005. Failure to comply with this order may result in dismissal of the complaint for failure to prosecute. *See* FED. R. CIV. P. 41(b) ("For failure of the plaintiff to prosecute or to comply

---

**32.** This conclusion is dictated by *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988), in which the Supreme Court held that transfer of a removed case was warranted under § 1404 based on the parties' forum selection clause. *See id.* at 32, 108 S.Ct. 2239. In finding that § 1404 applied, the Court necessarily (albeit implicitly) held that venue was "proper" in both the district to which the action was removed and the district identified in the forum selection clause. *See* 28 U.S.C. § 1404 (permitting transfer when venue would be proper in either district); *see also Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 878–79 (3d Cir.1995). The parties' agreement did not divest the district to which the case was removed of venue over the action, opening the case to dismissal

under Federal Rule of Civil Procedure 12(b)(3) (permitting dismissal for improper venue), but merely supplied powerful evidence of the inconvenience of that location, permitting transfer under § 1404 or dismissal for *forum non conveniens*. *Kerobo v. Southwestern Clean Fuels, Corp.*, 285 F.3d 531, 534–38 (6th Cir.2002); *cf. Stewart*, 487 U.S. at 32, 108 S.Ct. 2239. *Contra Lipcon v. Underwriters at Lloyd's, London*, 148 F.3d 1285, 1290 (11th Cir.1998); *but cf. Salovaara*, 246 F.3d at 298–99 (stating that "dismissal [under Rule 12(b)(6)] is a permissible means of enforcing a forum selection clause that allows suit to be filed in another federal forum"); *Lambert v. Kysar*, 983 F.2d 1110, 1113 & n. 2 (1st Cir.1993) (same).

with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against the defendant."); *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630–31, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962) (interpreting Federal Rule of Civil Procedure 41(b) as permitting *sua sponte* dismissals by the court).